### ORDER

Deborah A. Rocco, Philadelphia, for petitioner.

Jennifer Chun Strawn, Philadelphia, for respondent.

Before DOYLE, President Judge, LEADBETTER, Judge, and LEDERER, Senior Judge.

LEADBETTER, Judge.

M & M Stone Company (M & M) appeals from an order of the Workers Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) granting of benefits to claimant Sammie Needham. M & M argues that Doc's Trucking Company (Doc's), an earlier employer of claimant, is solely liable for claimant's benefits and is subject to Pennsylvania jurisdiction under Section 305.2 of the Workers' Compensation Act (Act) [1].

Claimant filed claim petitions against M & M and Doc's on November 29, 1993. M & M had earlier issued a notice of workers'

**M & M STONE COMPANY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (NEEDHAM), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 25, 2000.

Decided July 23, 2001.

---

**1.** Section 305.2 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, added by Section 9 of the Act of December 5, 1974, P.L. 782, *as amended,* 77 P.S. § 411.2.

compensation denial, checking a box indicating that claimant had not suffered a work-related injury. Both M & M and Doc's filed answers denying liability and asserting that claimant's disability was caused by an injury suffered while in the other company's employ. Doc's additionally argued that it was not subject to the jurisdiction of the Pennsylvania Workers' Compensation Act. The WCJ filed his decision on June 18, 1998, making the following relevant findings:

29. The Claimant in approximately April or May 1992, was a resident of Pennsylvania and while employed in the employer Doc's Trucking Inc. Levittown facility, was working as a subcontractor and was hired as an Employee of Doc's Trucking Inc. as a truck driver. The Claimant completed his application for employment at the Levittown, Pennsylvania office.

30. The Claimant performed his truck driver duties for Doc's Trucking Inc. which required him to drive in many states other than Pennsylvania and New Jersey. Doc's Trucking Inc. on or about May 1992, relocated to Trenton, New Jersey.

31. On August 29, 1992, the Claimant, while employed performing duties as a truck driver for Doc's Trucking, pulling a freight container from a trailer at J.F.K. International airport in New York, suffered an injury experiencing low back, groin and leg pain.

32. Doc's Trucking Inc. through its insurer, Liberty Mutual Insurance Company, accepted liability for the August 29, 1992 injury to the Claimant. The Claimant was paid a total of $1,000.00 in Workers' Compensation Indemnity Benefits as well as medical benefits for the period September 3, 1992 to September 27, 1992. The benefits were paid pursuant to the New Jersey law.

33. The Claimant, due to his experienced low back, groin and leg pain, caused by his August 29, 1992 injury, was not able to return to his truck driver duties for Doc's Trucking Inc. He could not take the bouncing, sitting or the long hours. On or about August 1, 1992[sic][2], the Claimant began working for Lee Burkhart Excavating, located in Pennsylvania. The Claimant worked for Burkhart Excavating for approximately six months at wages greater than he was earning at Doc's Trucking Inc. The Claimant during this period of time experienced ongoing symptoms of pain in his low back and legs due to his August 29, 1992 injury.

34. The Claimant in April 1993 began working for Employer M & M Stone Co. The Claimant continued to experience pain in his low back and numbness in his leg. The Claimant on August 27, 1993 while employed for M & M Stone Co. and lifting a cable suffered a second injury to his low back, which totally disabled him as of August 30, 1993.

35. The Claimant ongoing from August 29, 1992 experienced low back, groin pain and numbness in his legs. The pain subsequent to August 27, 1993, changed in degree, with the experienced numbness in his legs, while working at M & M Stone prior to August 27, 1993, experienced about once a week and after August 27, 1993 experienced on a daily basis.

36. The Claimant prior to August 29, 1992 did not experience low back pain or

2. Claimant actually testified that he started working for Lee Burkhart Excavating in October 1992. The date set forth in the WCJ's opinion is obviously erroneous, but of no consequence to the issues on appeal.

numbness that he experienced on August 29, 1992 and August 27, 1993.

37. The Claimant attempted to return to work for Employer M & M Stone Co. in January 1994, but did not return due to the Employer through Brian Carpenter, requiring the Claimant to sign a release form in order to come back to work. The Claimant refused to sign the form.

38. The Claimant is unable to perform his time of August 29, 1992 truck driver duties for Doc's Trucking Inc. ongoing from August 30, 1992 to the present, nor is he capable of performing his duties as a laborer loading operator for M & M Stone Co. ongoing from August 27, 1993 to the present.

39. The testimony of the Claimant has been reviewed in its entirety, it is persuasive and accepted as credible. The testimony of the Claimant, including but not limited to his being hired at the Levittown facility by Doc's Trucking. His onset of pain its degree and nature beginning on August 29, 1992, as well as its affect on his capability to do his truck driver duties as well as subsequent employment found to be persuasive and credible. The Claimant's increase in pain on August 27, 1993 while employed by M & M Stone as well as his increase in leg numbness ad affect on his capability to work are further persuasive and credible.

Claimant presented the deposition testimony of Robert W. Mauthe, M.D., a physician certified in physical medicine, rehabilitation, and electrodiagnostic medicine. Dr. Mauthe opined that claimant suffered an injury to his L5–S1 disk on August 29, 1992, rendering him unable to work from September 1, 1992 until October 1992. Dr. Mauthe also testified that claimant suffered a second injury on August 27, 1993 which resulted in further leakage of disk material. Dr. Mauthe agreed that while claimant was never free of symptoms after his August 1992 injury and prior to his August 1993 injury, there was a difference in the magnitude of pain caused by the injuries. Dr. Mauthe further opined that claimant would be working were it not for the August 1993 injury. M & M offered the testimony of another physician, M. Barry Lipson, M.D., who opined that claimant's condition was due to the August 1992 injury. The WCJ resolved the discrepancies between the parties' experts' testimony in favor of Dr. Mauthe.

Based upon his findings, the WCJ concluded that Doc's was bound by the Workers' Compensation Act and that claimant had established that he suffered compensable work injuries on August 29, 1992 and August 27, 1993, from which he had not recovered. Based on his conclusion that Claimant earned an average weekly wage of $604.33 while working for Doc's and $579.21 while working for M & M, the WCJ calculated that claimant was entitled to benefits of $386.14 per week from M & M and an additional $16.75 per week in partial disability benefits from Doc's.

Both Doc's and M & M appealed the WCJ's decision to the Board. The Board affirmed the grant of claimant's petition against M & M, but reversed the WCJ's decision with regard to Doc's on the ground that Doc's was not subject to Pennsylvania jurisdiction for the purposes of the Workers' Compensation Act because claimant's employment was principally localized in New Jersey. On appeal to this court, M & M argues that claimant sustained only a recurrence of his August 27, 1992 injury, and therefore, that Doc's is solely responsible for payment of benefits. In connection with this argument, M & M challenges the Board's conclusion that Doc's is not subject to jurisdiction in Pennsylvania. For the reasons that follow, we

conclude that M & M is liable for the amount of benefits granted by the WCJ, but do not reach M & M's jurisdictional argument.

We have described the distinction between an aggravation and a recurrence as follows:

> Our courts have utilized the phrase "aggravation of a pre-existing condition" to denote a new work-related injury, as opposed to a "recurrence of a prior injury," which denotes an injury directly related to a prior injury. In most situations where this sort of dispute arises, both the original injury and the subsequent occurrence contributes in some way to the disability at issue. Nonetheless, in order to adjudicate the rights of the parties, we frequently must attribute causation of the current disability to one event or the other. Thus, we have held that if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident which does not contribute materially to the disability, then the claimant has suffered a recurrence. Conversely, of course, where the intervening incident does materially contribute to the disability, a new injury, or aggravation, has occurred.

*SKF USA, Inc. v. Workers' Compensation Appeal Bd. (Smalls)*, 728 A.2d 385, 388 (Pa.Cmwlth.1999) (citations omitted).

The WCJ found credible the testimony of claimant's expert, Dr. Mauthe. Dr. Mauthe testified that:

> I think that Mr. Needham has the L5–S1 disk in his lower back, which is abnormal. He had no complaints until August 29, 1992. I think at that time he suffered what's called an annular disrup-

tion. The disk is made up of two parts, an inner soft core and an outer set of fibers that contains the soft core. The liquid inside the disk has a lot of enzymes in it. It's very painful when it becomes exposed to the outside, and I believe he developed an abnormality in the outer portion of the disk, which allowed the inner portion of the disk to go to the outside. It did not herniate and press on a nerve, but was such that it resulted in complaints of pain.

> I think that for the most part that quieted down for the next year or two, he continued working, although he changed jobs, and I think on 8/27/1993, *he suffered a second annular disruption that resulted in further leakage of the internal disk material,* which resulted in pain, paresthesias, or tingling in the legs, as a result of a chemical irritation from the inside of the disk, which was then brought to the outside of the disk, resulting in his complaints of pain.

> My layman's terms is that I think he suffered a leak in his disk, which essentially sort of quieted it down, and *then I think he suffered a second disruption, which resulted in frontal leakage of the internal disk material, and I think that's why he has pain to this day.* (emphasis added.)

The WCJ credited the testimony of Dr. Mauthe that claimant suffered an aggravation of his condition in August 1993, but for which he would be working. Thus, for the purposes of the Workers' Compensation Act, claimant experienced a new compensable injury on August 27, 1993 and M & M is liable for benefits based on claimant's salary before the aggravation.[3]

Finally, we will not address M & M's jurisdictional argument. Although the

---

**3.** M & M, recognizing that determinations of credibility are solely within the province of the WCJ, attempts to cast its recurrence argument not as a challenge to the WCJ's findings, but to the foundation upon which Dr. Mauthe premised his testimony regarding claimant's condition. However, this distinction is entirely semantic, as M & M still essentially asks

Board (like the WCJ) disposed of the separate claim petitions against M & M and Doc's in a single order, M & M has no interest in whether Doc's is required to pay the additional $16.75 awarded by the WCJ as partial disability benefits. That portion of the order of the Board reversing the award against Doc's did not increase or otherwise affect M & M's liability. Only the claimant was aggrieved by that part of the order, but he took no appeal therefrom. While claimant has filed a brief in which he argues that Doc's is subject to Pennsylvania jurisdiction and is liable for the additional partial benefits granted by the WCJ, Rule 1511 of the Pennsylvania Rules of Appellate Procedure provides that the proper manner for obtaining review of a governmental determination is to file a petition for review. Since claimant failed to file a petition for review, or any other form of appeal from the Board's order, his arguments have been waived. *See McKay v. Workmen's Compensation Appeal Bd. (Osmolinski)*, 688 A.2d 259 (Pa.Cmwlth.1997) (issue not raised in petition for review is waived and will not be addressed by this Court).

In light of the foregoing, we affirm.

The decision in this case was reached before the expiration of the appointment of Senior Judge LEDERER to the Commonwealth Court by the Supreme Court of Pennsylvania.

### ORDER

AND NOW, this 23rd day of July, 2001, the order of the Workers' Compensation Appeal Board in the above captioned matter is AFFIRMED.

us to reweigh the evidence. We decline M & M's invitation to do so.